from enforcing the jury-waiver provision in this action. For a Declaratory Judgment stating that the Mutual Arbitration Agreement (DocuSign Envelope ID: C592F559-005D-49F0-979B-509DF8579059) is void ab initio and non-severable. Specifically ask the Court to declare that its "original ink" requirement violates the E-SIGN Act and its 25-demand threshold constitutes an unlawful mass-arbitration barrier.

293. On Count VI (California wrongful termination in violation of public policy under Tameny), compensatory damages (including back pay, Double Back Pay as mandated by the Dodd-Frank Act (15 U.S.C. § 78u-6(h)(1)(C)); un-capped front pay, compensatory damages, and lost commissions explicitly calculated against the destruction of the $200 million Neutraderm/DRMTLGY pipeline and the diversion of the 31 Jackson Hewitt merchant accounts; treble damages under Civil RICO (18 U.S.C. § 1964(c)) for the intentional destruction of this business property, and emotional-distress damages), and uncapped punitive damages based specifically on the conscious disregard, authorization, and ratification of the malicious acts by managing agents, explicitly naming CEO Frank B. Holding, Jr. and Chief Legal Officer Matt Martin to the fullest extent permitted by California law.

294. On Count VII (Civil RICO), treble damages under 18 U.S.C. § 1964(c) for all economic harm to Plaintiff's business and property, including lost compensation, lost pipeline and deal value, and other financial injuries; costs of suit; and reasonable attorneys' fees, all recoverable on a joint and several basis from Defendants and other RICO participants.

295. On Count VIII (Dodd-Frank Anti-Retaliation), all relief authorized by 15 U.S.C. § 78u-6(h)(1)(C), including reinstatement, double back pay with interest, litigation costs, expert witness fees, and reasonable attorneys' fees.

296. On Count IX (Breach of Implied Covenant and Conversion), compensatory damages for lost and underpaid compensation, commissions, and pipeline value (including the approximately $200 million Neutraderm/DRMTLGY pipeline and other California-oriented opportunities); disgorgement of ill-gotten gains; pre- and post-judgment interest; and uncapped punitive damages based specifically on the conscious disregard, authorization, and ratification of the malicious acts by managing agents, explicitly naming CEO Frank B. Holding, Jr. and Chief Legal Officer Matt Martin for Defendants' oppressive, fraudulent, and malicious conduct.

297. On Count X (SCA and CIPA), statutory damages per violation under the SCA and Cal. Penal Code § 637.2 (or treble actual damages, whichever is greater); punitive damages where authorized; injunctive relief (including cessation of unlawful interception and access practices and deletion or segregation of improperly obtained data); and reasonable attorneys' fees and costs. For the immediate disqualification of Fox Rothschild LLP (specifically Jeremy Sayre and Lisa Williford) due to their un-waivable status as material fact witnesses to your June 18 termination and the June 5 OSHA obstruction; furthermore, explicitly request that the Court refer the record of their intentional misrepresentations and false pleading certifications (29 C.F.R. § 18.35) to the appropriate State Bar and federal disciplinary authorities.

298. On Count XI (Intentional Interference with Prospective Economic Advantage), compensatory damages for lost economic opportunities, lost commissions, and lost business relationships; uncapped punitive damages based specifically on the conscious disregard, authorization, and ratification of the malicious acts by managing agents, explicitly naming CEO Frank B. Holding, Jr. and Chief Legal Officer Matt Martin; and such equitable relief as may be necessary to remediate ongoing reputational harm and blackballing effects.

299. On Count XII (Hazel-Atlas Fraud on the Tribunal / Inherent Authority Sanctions), a declaration that Defendants' conduct constitutes fraud on the tribunal and abuse of the judicial process; monetary sanctions, including attorneys' fees and costs reasonably incurred in addressing spoliation and tribunal-integrity issues; adverse inferences and issue/evidentiary sanctions as appropriate; and such further inherent-authority relief as the Court deems just and proper to remedy the taint and deter similar misconduct. For the entry of Default Judgment on liability regarding your SOX and Dodd-Frank claims as the only appropriate sanction for the June 4, 2025 enterprise wipe (Ticket RITM0730529) and the subsequent multi-forum cover-up; alternatively, adverse-inference instructions establishing that the destroyed device-resident ESI contained irrefutable proof of your protected disclosures and the Bank's retaliatory animus.

300. On Count XIII (Labor Code § 1198.5), statutory penalties of $750 per violation for Defendants' willful failure to timely provide Plaintiff's personnel records; injunctive relief compelling full production of all personnel records encompassed by § 1198.5; a declaration that

Defendants' unclean hands bar them from invoking equitable defenses based on their own statutory non-compliance; and an award of reasonable attorneys' fees and costs as authorized by § 1198.5(k).

301. On Count XIV (FEHA Aiding and Abetting), compensatory damages and uncapped punitive damages based specifically on the conscious disregard, authorization, and ratification of the malicious acts by managing agents, explicitly naming CEO Frank B. Holding, Jr. and Chief Legal Officer Matt Martin against the individually named managers (including but not limited to Dana Lomas, Carlos Gonzalez, Jon Poulsen, and Ted Bush) for aiding and abetting FEHA violations, as well as attorneys' fees and costs under FEHA.

302. On Count XV (Punitive Damages via Managing-Agent Ratification), punitive damages under Cal. Civ. Code § 3294(b), without statutory cap, based on managing-agent authorization, ratification, and conscious disregard by CEO Frank Holding, Jr., Chief Counsel Matt Martin, Board members, and other officers/directors, in addition to the compensatory and statutory relief requested in the other counts.

303. Reservation of the Court's authority to impose appropriate remedies under Fed. R. Civ. P. 37(e) and the Court's inherent authority upon motion after record development, including an adverse inference, evidentiary or issue sanctions, and fee-shifting for spoliation-related motion practice.

304. Pre-judgment and post-judgment interest as permitted by law.

305. Costs of suit and reasonable attorneys' fees where authorized by statute or contract, including under SOX, ADA/FEHA, FMLA, ERISA,

RICO, Dodd-Frank, SCA/CIPA, Labor Code § 1198.5, and other applicable provisions.

306. Such other and further legal and equitable relief as the Court deems just and proper.

## X. DEMAND FOR JURY TRIAL

307. Plaintiff demands a trial by jury on all issues so triable.

**EXHIBIT LIST**

Exhibit A — May 21, 2025 Fox Rothschild LLP "CONFIDENTIAL RULE 408 COMMUNICATION" Letter

Exhibit B — June 18, 2025 Termination / Status Communications (including 2:36 p.m. email from Jeremy R. Sayre)

Exhibit C — June 4, 2025 Organizational Data Removal Screenshots (Ticket RITM0730529)

Exhibit D — Service Desk Transcript – Ticket RITM0730529 (June 4, 2025)

Exhibit E — September 30, 2025 Pre-Hearing Conference Transcript Excerpt

Exhibit F — March 3, 2025 Manager Praise Email from Stephanie Daughtridge

Exhibit G — March 22, 2025 Clinical Trial Coordinator Email re: Travel / Medical Conflict

Exhibit H — April 15, 2025 Written Warning Delivery Email Chain

Exhibit I — April 23–29, 2025 Preservation Notices to HR and Legal

Exhibit J — April 24, 2025 FMLA / ADA Accommodation Notice to HR Service Center

Exhibit K — April 25, 2025 Expanded Preservation Request re: Personal Devices

Exhibit L — April 29, 2025 Supplemental Preservation Request

Exhibit M — April 2025 Written Warning (clean version)

Exhibit N — June 20, 2025 HR Termination Confirmation Email

Exhibit O — June 17, 2025 Counsel "Extortion" Framing Email

Exhibit P — December 13, 2024 Mutual Arbitration Agreement (DocuSign Envelope ID C592F559-005D-49F0-979B-509DF8579059)

Exhibit Q — November 14, 2025 Respondent's Motion to Dismiss (OALJ)

Exhibit R — August 6, 8 & 14, 2025 SIU / Law Enforcement Threat Emails re: Litigation-Hold Laptop

Exhibit S — March 24, 2025 Supplemental Disclosure – Carlos Gonzales (Vendor Fraud)

Exhibit T — September 14, 2024 Dana Lomas Text Message (Vendor Fraud Discussion)

Exhibit U — January 7, 2026 EEOC Notice of Right to Sue (Charge No. 487-2025-02310)

Exhibit V — January 6, 2026 OALJ Order Denying Respondent's Motion to Dismiss (OALJ No. 2025-SOX-00035)

Exhibit W — January 12, 2026 Pre-Hearing Conference Transcript Excerpt (Timlin / Williford / Sayre)

Exhibit X — June 17, 2025 Counsel "Extortion" / Criminalization Framing Communication

Exhibit AA — Compilation of Complainant's OALJ Filings (510 pages)

Exhibit AB — Compilation of Respondent's OALJ Filings (283 pages)

Dated: February 28, 2026
/s/ Jared Ashcraft

JARED ASHCRAFT
Pro Se Plaintiff
PO Box 363242
N. Las Vegas, NV 89036
Telephone: 252-258-1535
Email: legal@ashcraft.me

Jared Ashcraft

Digitally signed by Jared Ashcraft
DN: cn=Jared Ashcraft, c=US, o=ADA | FMLA | SOX Whistleblower, email=legal@ashcraft.me
Date: 2026.03.02 18:47:11 -08'00'

# Table of Contents

**Exhibit A - 2025-0521 Letter to J. Ashcraft-C ....................2**
**Exhibit B - URGENT & FORMAL DEMAND_ Immediate Action Required to Cease Obstruction of 401(k) Distribution 2025-06-18T14_36_36-07_00-1-2 ....................5**
**Exhibit C - Screenshot_20250604_051028_Outlook (1).jpg....................8**
**Exhibit D -Transcripts-001-2025-SOX-00035 - FCB SERVICE DESK CALL TRANSCRIPT – RITM0730529....................9**
**Exhibit E - Unofficial Transcript – September 30, 2025 Pre-Hearing Conference – Ashcraft v. First Citizens Bank & Trust Company, OALJ Case No. 2025-SOX-00035 .......13**
**Exhibit F - COMPLAINANT'S NOTICE OF JUDICIAL ADMISSION ESTABLISHING FIDUCIARY-LEVEL KNOWLEDGE OF "RED FLAG" MISCONDUCT....................46**
**Exhibit G - COMPLAINANT'S CONSOLIDATED NOTICE OF COUNSEL'S KNOWING FALSE STATEMENT TO THE TRIBUNAL AND RECORD CLARIFICATION....................51**
**Exhibit H - COMPLAINANT'S SUPPLEMENTAL NOTICE REGARDING COUNSEL MISREPRESENTATIONS TO CALJ HENLEY (AUGUST 20, 2025) AND COUNSEL JUDICIAL ADMISSION AT THE SEPTEMBER 30, 2025 CONFERENCE ....................57**
**Exhibit I - COMPLAINANT'S NOTICE REGARDING RESPONDENT'S MOTION TO DISMISS AS AN INDEPENDENT FRAUDULENT MISREPRESENTATION TO THE TRIBUNAL ....................106**
**Exhibit J - Ashcraft__Jared_-_Bush-Formal_Preservation_of_Records_Request___ADA_FMLA_....................122**
**Exhibit K - Ashcraft__Jared_-_HRSC__HR_Service_Center__-Formal_Notification_of_FMLA_Claim_and_ADA_Accommod....................124**
**Exhibit L - Ashcraft__Jared_-_HRSC__HR_Service_Center__-Request_for_Record_Preservation___Jared_T_Ashcraft ....................126**
**Exhibit M - WW_Jared Ashcraft_P1_2025-C ....................128**
**Exhibit N - Jared_Ashcraft_-_Green-Re_First_Citizens_Bank_HR_Follow_Up ....................130**
**Exhibit O - Sayre__Jeremy_R__-_Jared_Ashcraft_-Re__EXT__Demand_for_Immediate_Compliance_with_Cali....................133**
**Exhibit P - Mutual Arbitration Agreement....................136**
**Exhibit R - Multiple Threats of Law Enforcement Action to Reclaim Litigation Hold Laptop Post Spoliation of Evidence ....................141**
**Exhibit S - Supplemental Disclosure – Carlos Gonzales (Vendor Fraud Disclosure, March 24, 2025)....................156**
**Exhibit T - Lomas Sept 14 text.jpg....................160**
**Exhibit U: NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST) ....................160**
**Exhibit V: OALJ ORDER DENYING RESPONDENT'S MOTION TO DISMISS ....................166**
**Exhibit W: Counsel "Extortion" / Criminalization Framing Communication....................176**

Fox Rothschild

301 Hillsborough Street
Suite 1120
Raleigh, NC 27603
919.755.8700 919.755.8800
www.foxrothschild.com

JEREMY R. SAYRE
Direct No: 919.719.1252
Email: jsayre@foxrothschild.com

May 21, 2025

**CONFIDENTIAL RULE 408 COMMUNICATION**

**Via Email:**
Jared Ashcraft
Jared.Ashcraft@firstcitizens.com

**Re: First Citizens Bank**

Dear Mr. Ashcraft:

This law firm represents First Citizens Bank (the "Bank") in connection with the recent concerns you have addressed to the Bank's Chief Legal Officer, Matt Martin, and other Bank Leadership. The purpose of this letter is to clarify those concerns and to request that any and all future correspondence regarding this matter be directed to my attention.

As an initial matter, I understand you have sent several communications to Mr. Martin and others referencing various violations of state and federal laws. This includes references to employment laws, such as the Americans with Disabilities Act (ADA) and Family Medical Leave Act (FMLA). As an employer, the Bank's standard practice (and obligation) is to investigate employment-related matters internally in order to determine what actions, if any, are appropriate. I understand that this investigation is, in fact, underway and is being conducted by the Bank's Manager, HR Advisory Services, Queena Green. We encourage you to cooperate with this process so that a thorough investigation may be completed.

In addition to the above employment concerns, your recent communications have raised allegations suggesting the Bank has engaged in corporate-related misconduct (e.g., securities violations or other financial crimes) under the Sarbanes-Oxley Act (SOX) and SEC Rule 13a-15. Additionally, you have alluded to various "disclosures" you have made that you believe qualify you as a whistleblower under these federal laws. The Bank would like to investigate these concerns; however, following a detailed review of your recent communications, we are unable to understand the specific nature of your claims.

Fox Rothschild

A whistleblower complaint generally arises when an employee such as yourself reports conduct that constitutes securities or other applicable law or regulatory violation, corruption, fraudulent, unethical, or illegal activity or conduct, including violations of the Bank's Code of Ethics. This typically involves misconduct believed to create a significant danger to public health or safety, or a case of gross waste or abuse of authority, such as theft or embezzlement, fraud, deficiencies in internal controls, insider trading, money laundering, or misuse of confidential information.

We have reviewed your communications, but remain unclear what specific claims you are making which you believe rise to this level. In particular, we are not clear what the "protected disclosures" are that you contend you have made. We understand you complained about potential disparate treatment which Queena Green is investigating. To the extent this particular complaint implicates the ADA or FMLA, you certainly are entitled to protections such that the Bank will not tolerate any retaliatory action taken against you because of the complaint. However, this type of "disclosure" generally does not implicate any whistleblower laws. If you contend you have made other "protected disclosures" that do implicate applicable whistleblower laws, please provide all relevant details regarding such disclosure(s) including: (1) the nature of the disclosure; (2) the date on which it was made; and (3) to whom the disclosure was made.

We also request that you clarify the allegations made in your recent communications. For instance, your most recent correspondence dated May 20, 2025, referenced "the diversion of 31 Jackson Hewitt merchant accounts." You contend that the Bank took no action to investigate this and failed to enforce internal control protections. So that the Bank may appropriately investigate this claim, please provide specific details concerning each of the following questions:

- How do you contend such accounts were misappropriated and to whom were the accounts diverted?
- What actions do you contend the Bank should have taken?
- How do you believe these actions constitute a legal violation on the part of the Bank (including what specific law was violated)?
- What control and oversight failures do you contend occurred, and how do you believe such failures implicate SOX compliance and reporting obligations?

In addition to the above, previous correspondence from you alluded to the "willful sabotage of a $200 million merchant processing opportunity." In connection with this claim, please identify the specific actions that you contend constitute a violation of the Bank's legal obligations and the specific law you believe was violated.

We understand you have raised additional concerns regarding credit for "revenue-generating accounts" you originated that you believe was "intentionally stripped or reassigned" from you. In connection with this claim, please identify <u>all</u> accounts you contend were "stripped or reassigned" from you and explain how you were damaged. In addition, please describe how you contend the Bank's actions constitute a legal violation (including the specific law violated).

Fox Rothschild

It appears the remaining concerns you have raised relate to actions which you believe were taken in retaliation for the "protected disclosures" made by you. This includes your claim that the Bank "engaged in deliberate IT-level manipulation" of your electronic communications. As has been explained to you, it is common for the Bank to reroute emails to a centralized location in order to appropriately manage correspondence so nothing gets missed. Despite your suggestion, there is nothing nefarious or troublesome about this practice. This is a standard practice for the Bank which is appropriately used in situations such as yours where external email address(es) are used to send a high volume of emails to various Bank representatives. In fact, please be advised that the Bank will continue to redirect your messages from any external email address. For that reason, I ask that you refrain from attempting to contact Mr. Martin or other Bank leaders concerning the matters addressed herein and instead direct any relevant communications to my attention. I will ensure that your communications are shared appropriately within the Bank's established communication channels. Communications regarding the internal HR investigation should be addressed to Queena Green or another member of HR.

The Bank has no desire to ignore reports of conduct which is believed to be illegal in nature. On the contrary, the Bank is obligated to investigate such conduct and take remedial action when appropriate. Unfortunately, despite the high volume of correspondence you have sent, the Bank is not clear regarding what it is that you allege. Accordingly, we hope that you will respond to the specific requests set forth in this letter so that an appropriate investigation may be conducted. Following an appropriate investigation, the Bank can then determine the appropriate next steps. Rest assured that the Bank has taken, and will continue to take, all appropriate action to ensure relevant documentation is preserved.

In conclusion, the Bank fully understands you are permitted to pursue any legal claim you wish. You also are able to engage counsel, which we encourage you to do in order to better understand the nature of the claims you are asserting. Further, provided you act in good faith, you are permitted to report any misconduct that you reasonably believe constitutes a violation of the law.

**Notwithstanding the above, please be advised that you must safeguard the Bank's confidential information, as well as the confidential information of its customers and prospective customers. Any improper disclosures of such sensitive information will constitute a violation of the Bank's Code of Ethics and applicable laws.**

I will be happy to address any questions that you or counsel may have. Otherwise, I look forward to your response to the requests set forth above.

Regards,

Jeremy R. Sayre

**From:** Sayre, Jeremy R.
**Sent on:** Wednesday, June 18, 2025 2:36:24 PM
**To:** Jared Ashcraft
**Subject:** RE: [EXT] URGENT & FORMAL DEMAND: Immediate Action Required to Cease Obstruction of 401(k) Distribution

Mr. Ashcraft:

Thank you for your prompt response. I assure you there is no effort or desire to leverage your access to your retirement savings in order "to induce a resignation." Rather, my sole intention was to confirm I correctly understood your position before the Bank advised Fidelity of the change in your employment status. Based on your response, I understand your position to be that your employment with the Bank has been constructively terminated. Accordingly, the Bank will reflect your employment status as terminated and advise Fidelity accordingly. With tomorrow being a federal holiday, the Bank is closed and I expect Fidelity will be as well. As such, please understand that Fidelity may not receive notice of the change in your employment status until Friday.

Regards,

Jerry

Fox Rothschild

**Jerry Sayre**
Partner
301 Hillsborough Street
Suite 1120
Raleigh, NC 27603
(919) 719-1252
(919) 607-0145
(919) 755-8800
jsayre@foxrothschild.com

**Learn about our new brand.**

---

**From:** Jared Ashcraft <Jared@ashcraft.me>
**Sent:** Wednesday, June 18, 2025 4:08 PM
**To:** Sayre, Jeremy R. <JSayre@foxrothschild.com>; FCBDirectors@FirstCitizens.com; matt.martin@firstcitizens.com; investor.relations@firstcitizens.com
**Cc:** legal@ashcraft.me
**Subject:** RE: [EXT] URGENT & FORMAL DEMAND: Immediate Action Required to Cease Obstruction of 401(k) Distribution

**Mr. Sayre,**

I am in receipt of your email dated June 17, 2025. This communication confirms and escalates the pattern of retaliatory conduct by First Citizens Bank and its legal counsel.

Let the record be clear on the following points:

1. **Rejection of Your Premise:** I reject your characterization that I am "refusing to cooperate." My cooperation has been made impossible by the Bank's actions, including but not limited to denying me access to essential work systems, intercepting communications, and your own documented misrepresentations which have broken the trust required for a good-faith process. I remain willing to cooperate with an independent, unconflicted party once retained by the Bank.
2. **Unpaid Leave as Constructive Discharge:** The Bank's decision to place me on an involuntary, unpaid administrative leave constitutes a constructive discharge. This action, which severed my income stream, was a direct and foreseeable consequence of the hostile and unlawful retaliatory environment created by the Bank—an environment I formally declared was untenable in my "Protected Workload Suspension Declaration" of May 22, 2025.

3. **3. Coercive Resignation Offer & Documentation of Bad Faith: Your offer to "accept" my resignation in exchange for releasing my vested retirement funds is a transparently coercive and bad-faith tactic. Withholding my salary and then leveraging my access to my own vested retirement savings to induce a resignation is further evidence of retaliation. I thank you for this correspondence, as it will serve as a primary exhibit of the Bank's retaliatory animus and will be cited as such in all current and future regulatory and legal proceedings. For the avoidance of all doubt, I am not resigning.**

4. **Demand to Cease Unlawful Pressure:** I demand the Bank cease this unlawful pressure campaign. Your email is now Exhibit A of the ongoing retaliation.

Given that you have now undeniably confirmed the Bank's hostile position, you have left me with no alternative but to escalate my actions. This correspondence will be immediately appended to my complaints with the EEOC, the Department of Labor OIG, the SEC, and the North Carolina State Bar.

Best regards,

**Jared Ashcraft**
**Sr. Merchant Services Specialist**

On Wednesday, June 18th, 2025 at 8:47 AM, Sayre, Jeremy R. <JSayre@foxrothschild.com> wrote:

Mr. Ashcraft:
I received your correspondence yesterday concerning your health insurance and retirement account with Fidelity.
As an initial matter, I will remind you that your employment with First Citizens Bank has not been terminated. Rather, as you know, you were put on an administrative leave of absence after you informed the Bank that you were unable to continue performing your duties until the various complaints you raised with the Bank had been resolved. Since then, despite your refusal to cooperate, the Bank has made all good faith efforts to investigate both your HR-related concerns as well as the whistleblower complaint you have raised. That process is ongoing but is expected to be completed soon.
At the time your leave began, you were advised that you were eligible for a maximum of 2 weeks paid leave pursuant to the Bank's TAFW policy, and that any leave beyond that would be unpaid. In accordance with this policy, the Bank has paid you the maximum benefit and, thus, your current leave is unpaid. This does not, however, have any impact on your benefits including health insurance, which remain intact.

Finally, the communication we received from you late yesterday suggests that you would like the Bank to advise Fidelity of your "separation from service" so that you may access your vested retirement funds. To reiterate, the Bank has not reported this to Fidelity because your employment has not, in fact, been terminated at this time. That said, if you maintain that your employment with the Bank has terminated, then the Bank will accept this and update your status with Fidelity immediately.
Please be advised that, under those circumstances, your health insurance will continue through the end of this month at which time you will become eligible for COBRA.
Please advise how you wish to proceed.

Regards,

Jerry Sayre

**Jerry Sayre**
Partner
301 Hillsborough Street
Suite 1120
Raleigh, NC 27603
(919) 719-1252
(919) 607-0145
(919) 755-8800
jsayre@foxrothschild.com

**Learn about our new brand.**

This email contains information that may be confidential and/or privileged. If you are not the intended recipient, or the employee or agent authorized to receive for the intended recipient, you may not copy, disclose or use any contents in this email. If you have received this email in error, please immediately notify the sender at Fox Rothschild LLP by replying to this email and delete the original and reply emails. Thank you.

This email contains information that may be confidential and/or privileged. If you are not the intended recipient, or the employee or agent authorized to receive for the intended recipient, you may not copy, disclose or use any contents in this email. If you have received this email in error, please immediately notify the sender at Fox Rothschild LLP by replying to this email and delete the original and reply emails. Thank you.

5:10 6

# Org data removal

Your organization is now removing its data associated with this app because your account Jared.Ashcraft@firstcitizens.com is disabled.

This app will now restart. Contact your organization's support team for help.

OK

**Jared Ashcraft**
**Pro Se Complainant**
**Email: legal@ashcraft.me**
**Phone: (252)258-1535**

**UNITED STATES DEPARTMENT OF LABOR**
**OFFICE OF ADMINISTRATIVE LAW JUDGES**

| | | |
|---|---|---|
| Jared Ashcraft, | ) | |
| Complainant, | ) | |
| | ) | Case No. 2025-SOX-00035 |
| v. | ) | |
| | ) | |
| First Citizens Bank, | ) | |
| Respondent. | ) | |

## EXHIBIT: FCB SERVICE DESK CALL TRANSCRIPT – RITM0730529

---

**EXHIBIT: FCB SERVICE DESK CALL TRANSCRIPT – RITM0730529**

**Date/Time:** June 4, 2025 (~05:27 PDT)
**Participants:** Jared Ashcraft (Complainant) and "Sudri" (FCB Service Desk Representative)
**Reference No.:** RITM0730529

---

**Transcript**

**Service Desk:** Hi, thank you for calling FCB service desk. My name is Sudri. Who do I have the pleasure to speak with?
**Ashcraft:** My name is Jared Ashcraft.
**Service Desk:** Hi, how are you today?
**Ashcraft:** I am doing okay, sir. How about yourself?
**Service Desk:** I'm doing good. Thank you… Can you please provide me with your ID before we continue?
**Ashcraft:** QWE45.
**Service Desk:** Okay. And a phone number in case we get disconnected.
**Ashcraft:** 252-258-1535.

**Service Desk:** Thank you very much. Now, can you please tell me is this recording a new ticket or an existing one?
**Ashcraft:** It's a new ticket.
**Service Desk:** Can you please tell me more about your issue?
**Ashcraft:** I'm unable to log in. On May 22nd they put me on administrative leave that was supposed to end today. I tried to log in, but I still can't.
**Service Desk:** Okay. Are you trying to log into a specific app or your computer?
**Ashcraft:** I tried logging in to Outlook on my phone.
**Service Desk:** Sorry, can you repeat that?
**Ashcraft:** I was trying Outlook on my phone.
**Service Desk:** Okay. When was the last time you had access?
**Ashcraft:** May 21st, I believe.
**Service Desk:** Okay. Is your device an Apple?
**Ashcraft:** No, Android.
**Service Desk:** Thank you. I'll pull up some information. Please stay on the line. One more time, your user ID?
**Ashcraft:** QWE45WE.
**Service Desk:** Okay, thank you. One moment please.
**Ashcraft:** Mhm.
**Service Desk:** I'm seeing here that your account appears as **revoked**. In this case, you and your manager have to contact HR so it can be reactivated.
**Ashcraft:** So, my account status is revoked—that's correct?
**Service Desk:** Yes. The account for Jared Ashcraft with user ID QWE45 appears as revoked.
**Ashcraft:** Is that different than leave of absence?
**Service Desk:** Yes, that's different. It means your account has been **disabled**. You'll need HR to reactivate.
**Ashcraft:** Do you have a ticket number for me?
**Service Desk:** Yes, give me one moment… M0730529.
**Ashcraft:** 0730529. Got it. So I need HR to either unrevoke me or terminate me, one of the two?
**Service Desk:** That's correct. You must contact HR for reactivation or termination.
**Ashcraft:** Okay, thank you so much.
**Service Desk:** Thank you for calling FCB service desk. Have a great day.

---

**Evidentiary Note**

On June 4, 2025, at approximately **05:27 PDT**, Respondent's service desk confirmed Complainant's account status as **"revoked" / "disabled."** This contemporaneous admission directly contradicts Respondent's counsel's June 5, 2025 written denial that the device had "NOT been wiped." The transcript corroborates Complainant's screenshots and contemporaneous records of spoliation.

Respectfully submitted,

Jared Ashcraft
Pro Se Complainant
Dated: September 5, 2025

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Motion was served on all parties listed below by electronic mail on this day of Friday, September 5, 2025:

Jeremy Sayre
Fox Rothschild LLP
Email: jsayre@foxrothschild.com

Rachelle Bin
Fox Rothschild LLP
Email: rbin@foxrothschild.com

Matt Martin
Chief Counsel, First Citizens Bank
Email: matt.martin@firstcitizens.com

FCB Directors & Audit Committee
Email: fcbdirectors@firstcitizens.com

Frank B. Holding, Jr.
Chairman & CEO, First Citizens Bank
Email: frank.holding@firstcitizens.com

Dated: September 5, 2025

Jared Ashcraft
Pro Se Complainant

Jared Ashcraft, Pro Se
[redacted]
legal@ashcraft.me

**UNITED STATES DEPARTMENT OF LABOR**

**OFFICE OF ADMINISTRATIVE LAW JUDGES**

| | |
|---|---|
| Jared Ashcraft,<br>Complainant,<br><br>vs.<br><br>First citizens bank,<br>Respondent | Case No.: 2025-SOX-00035<br><br>**UNOFFICIAL TRANSCRIPT OF PRE-HEARING CONFERENCE** |

Date: September 30, 2025

Presiding: Hon. Theresa C. Timlin, Administrative Law Judge

APPEARANCES:

For Complainant: Jared Thomas Ashcraft (Pro Se)

For Respondent: Lisa Williford, Esq.; Jeremy Sayre, Esq. (Fox Rothschild LLP)

Court Reporter: Renee Carrasco

---

[Begin Transcript]

**CONFERENCE SYSTEM:**

After the tone, please state your name followed by the pound sign.

**MR. ASHCRAFT:**
Jared Ashcraft.

**CONFERENCE SYSTEM:**
Thank you. You are the first caller to this conference. Please wait while others join.

**MS. WILLIFORD:**
Good afternoon. This is Lisa Williford.

**MR. ASHCRAFT:**
Good afternoon, Jared Ashcraft.

**JUDGE TIMLIN:**
Good afternoon. This is Judge Timlin. Um, do I have Mr. Ashcraft or a representative for Mr. Ashcraft on the line?

**MR. ASHCRAFT:**
Yes, Your Honor. Mr. Ashcraft is appearing.

**JUDGE TIMLIN:**
Okay. And for the employer?

**MS. WILLIFORD:**
Good afternoon, Your Honor. This is Lisa Williford on behalf of First Citizens Bank.

**MR. SAYRE:**
And also, Your Honor, Jeremy Sayre here on behalf of First Citizens Bank.

**JUDGE TIMLIN:**

Great. All right. So, I am the judge assigned to this case and I like to do these calls relatively early in the process just to go over my expectations on how the case should progress, to discuss deadlines, and to set a schedule for discovery and for a hearing date.

Mr. Ashcraft, I just want to start – my understanding is you are not represented by an attorney.

**MR. ASHCRAFT:**

That is correct, Your Honor.

**JUDGE TIMLIN:**

Okay. Have you made any efforts to find an attorney to represent you?

**MR. ASHCRAFT:**

I have, but it was cost-prohibitive.

**JUDGE TIMLIN:**

Because I will tell you – and I can't help you in finding an attorney – but I will tell you that it is to your advantage if you can find someone to represent you. However, we are going to move forward. I'm just putting that out there.

The other thing I want to make you aware of is this: you are before the United States Department of Labor, Office of Administrative Law Judges. I have very limited jurisdiction in terms of what I can and cannot do with these cases. It's a hearing before me; it is not a jury hearing, and I have limited authority in that I can only rule on SOX-related issues, because that is the case that is in front of me.

So I cannot rule on other claims involving your employment with First Citizens that you feel are related. I can only do the things that are in front of me. The other thing both parties should know is that, because of the appellate body above me, the Administrative Review Board held within the last couple of years that I do not have subpoena authority, which means I cannot sign off on subpoenas to gather documents or to compel witnesses to testify.

If this is a case where you feel that you would need to be able to subpoena witnesses or do anything that involves subpoenas, then you might be better off exercising your rights under the kick-out provisions that enable you to take the case into federal district court, because they do have subpoena authority. That is something that I do not have.

So when we get to the hearing in this forum, your witnesses are going to have to come in voluntarily, because I cannot compel them to come in. Does everybody understand that?

**MR. ASHCRAFT:**

May I ask clarifying questions, Your Honor?

**JUDGE TIMLIN:**

Sure. Of course. That’s why I’m here.

**MR. ASHCRAFT:**

So you do not have subpoena power, but do you have motion power, or the ability to compel things like imaging of the laptop, etc.?

**JUDGE TIMLIN:**

No.

**MR. ASHCRAFT:**

Okay. And if I was to pay—

**JUDGE TIMLIN:**

I'm sorry. Go ahead.

I mean, I can issue orders on motions to compel discovery. I have powers under the discovery rules that are set forth in our Office of Administrative Law Judges Rules of Practice and Procedure, and those you can find on our website. But my powers to compel are limited. My powers to sanction are limited.

I can do things like – if things get really bad – I can dismiss a case. I can sanction by not allowing witnesses to testify or not allowing documents to come in front of me. But I don't have the power to, for example, hold somebody in contempt. I don't have that power.

**MR. ASHCRAFT:**

Yes. May I ask one more question?

**JUDGE TIMLIN:**

Does that help?

**MR. ASHCRAFT:**

Yes, ma'am.

**JUDGE TIMLIN:**

Sure.

**MR. ASHCRAFT:**

If I was to pay for the cost of imaging my personal phone that was used as a work phone – that is a central issue due to spoliation – being that I paid for it out of my pocket, would I still be able to submit the evidence as long as it's done correctly through, you know, a forensic lab?

**JUDGE TIMLIN:**

Yes. As long as – yes – you can offer anything that you want, that you feel is related to the case, into evidence. The other side will have the right to object, and if there is a legal reason to sustain the objection, I would sustain it. If there is a legal reason not to sustain the objection, then I would let it into evidence. Yes, you can present any evidence that you have in support of your case.

**MR. ASHCRAFT:**

Understood. Thank you.

**JUDGE TIMLIN:**

I just can't subpoena any evidence.

**MR. ASHCRAFT:**

Understood. Thank you so much.

**JUDGE TIMLIN:**

Okay. The other thing – and I will issue an order that will encapsulate some of this after we finish our discussion today – the other thing I want to talk about, because there have been motions, and I think I did issue kind of a general denial of all the motions that were in front of me, because they came in before I even had a chance to talk to you all:

When you file a motion in front of me, one of the things in the rules that you're supposed to do is try to get the position of the other side before you file it. Try to work things out. I encourage both sides to try to work things out, particularly in the discovery process. I do not think it's to anybody's advantage for me to spend all my time ruling on motions about what has been turned over or what has not been turned over.

But I do expect that, before you file any motions – and this is true for both sides – you will have reached out to the other side and tried to work things out, and if you can't work things out, you will advise me in the motion that you made an attempt to work things out, that you were unable to, and you will tell me what the other side's position is: that they agree with your motion, or that they don't agree with your motion. That's in our rules, and that needs to be done.

The other thing – and this is more recent, a response of mine in the last couple of years where I've had to be more vigilant – and this again applies to everyone: If you are using any kind of artificial intelligence, ChatGPT, or anything like that, in order to help you craft motions or filings that you are going to put in front of me, you have to give me a disclosure in the document saying that you have used artificial intelligence and that you have reviewed it – that you, a human being, an attorney in the case of First Citizens, or you, Mr. Ashcraft – that you have reviewed it and that you are attesting to its accuracy.

Because one of the things that we have learned in the legal profession now is that artificial intelligence has the ability to hallucinate cases and precedents that don't actually exist in the real world. So I'm expecting that, if you use any kind of artificial intelligence, you're going to tell me that you used it, and you're going to tell me that you proofread it and made sure it was correct before you submitted it in front of me. And that will also be in my order.

**MR. ASHCRAFT:**

May I comment on that, Your Honor?

**JUDGE TIMLIN:**

Yes, you may.

**MR. ASHCRAFT:**

I am a master prompt engineer, certified by both Google and IBM. I use AI in my work and I use AI in my personal life. I have used it in this case. I set it under what's called a retrieval-augmented generation service, meaning that it only pulls accurate, non-hallucinated evidence.

And I also submitted, early in the case – because Mr. Sayre, I believe, brought up Rule 11 – I submitted a side-by-side case briefing that showed every case that I had cited, the date of it, where it could be found in the Federal Register. I even provided web links for it so they could click on it and go directly to it.

**JUDGE TIMLIN:**

That's fine. What I'm telling you – that's fine – and I'm not telling you that you cannot use AI. What I am telling you is, if you have used it, you need to disclose that to me. And yes, you need to do something like what you just described: show me that the cases you are citing are actual, true, non-hallucinated cases. Show me that you've actually read this and you are standing by what you are submitting.

That's what I want. I'm not telling you that you cannot use it. I'm just telling you that I need to have assurances that – and this is true for both sides – somebody has actually read this and checked it and made sure that the cites are accurate before submitting it to me.

**MR. ASHCRAFT:**

Would you like me to submit a document with each motion or filing that shows the citation and reference?

**JUDGE TIMLIN:**

Yes.

**MR. ASHCRAFT:**

Okay. Perfect. Will do.

**JUDGE TIMLIN:**

Yes. This is my way of making sure that my work is correct and legally sound.

The other thing – and this is a weird conference call because of the date that it's on – and I don't know how aware either side is, but I am part of the executive branch of the federal government, which means that right now is the last day of the fiscal year and the last day that the government is funded for. At least right now, at 3:12 p.m., Congress has not authorized a budget or a continuing resolution to continue to fund the government past midnight today.

If that happens – and it has happened in the past – sometimes they go right down to the wire and at 11:59 they figure out a way to resolve their differences and they sign a continuing resolution. But sometimes they do not. If Congress does not fund the government past midnight today, none of us will be working here at the Office of Administrative Law Judges. We will all be shut down, and nothing will happen with any cases or case filings, literally nothing, until we are funded and able to operate again.

So we are going to do our best today to set some deadlines and ideas about when we would want discovery to end, when we would want to hold a hearing. But I'm telling you that all of those deadlines will toll, and "toll" means they're going to be held in abeyance until we're back in operation.

However – and there will be an order if we do shut down – there will be an order on OALJ's website that says this: that does not stop your obligation to continue to do discovery, to continue to work together to do discovery and/or to resolve the case. It just means that if there's anything that you're disagreeing about or anything that you need to bring to my attention, it's just going to have to wait, because I'm truly not allowed to even open my computer.

So I'm putting that out there: we're kind of at the eleventh hour, and I just had a meeting with my staff to discuss what happens in the event of a government shutdown. It has happened in the past. We do always eventually get back to work, and everything starts to operate again, but that's where we are right now. It would not be forthcoming of me if I didn't let everybody know that this is an issue.

**MR. ASHCRAFT:**

Your Honor, can I ask a question about that? And if I'm asking too many questions—

**JUDGE TIMLIN:**

Absolutely. No, you're supposed to ask questions. That's why we're here.

**MR. ASHCRAFT:**

All right. Thank you so much. I filed my pleading complaint on the 23rd. You gave Respondent

14 days to respond. I would assume that they're going to respond, based on Mr. Sayre's emails, with a motion to dismiss.

Is there any way that we could expedite this so that their answers are due on the 3rd? This case has already gone on since May 2025. Is there any way that we could expedite that so they have to submit their motion to dismiss today instead of waiting until the 3rd, in case the government is shut down?

**JUDGE TIMLIN:**

No, because even if they were to submit it today, I would not be allowed to act on it once midnight passes. And I can assure you that I'm not going to – anything that gets submitted to me this afternoon in any case – nothing's going to happen with it.

So if their answers are due on the 3rd and we shut down on the 1st, that deadline is tolled, meaning it just waits, and according to the order that will be on OALJ's website, it is tolled until five days after we resume work.

So if we shut down on the 1st and we come back on the 15th, and their deadline was the 3rd, then it means it would be due the 17th plus five days after that, because that's the tolling period. So it would be the date that we come back plus five days, added to the current deadline. Does that make sense?

**MR. ASHCRAFT:**

One follow-up question, if I may. Are the added days automatic, or is that because of the delay?

**JUDGE TIMLIN:**

It's automatic because that is the order that the Chief ALJ is putting into place if we shut down.

**MR. ASHCRAFT:**

And one final question on this subject, Your Honor. It's my understanding that, unlike an Article III court, the rules here do not add tolling simply because they file a motion to dismiss. Is that correct?

**JUDGE TIMLIN:**

If they were to file a motion while we were shut down, it would just sit, and your response would not be due until whatever the response date is under the rules plus five days after we return.

**MR. ASHCRAFT:**

I think I didn't clarify my question well; I apologize. What I'm asking is: let's hope for the best and that the government doesn't get shut down. If they were to file a motion to dismiss today, that doesn't toll their answers on the October 3rd date, correct? I know that in Article III courts, if you file a motion to dismiss, everything is held until that motion is decided. But from my understanding, under the OALJ rules, it would not be held. Is that correct?

**JUDGE TIMLIN:**

Right. That would be true. Yes, that would be correct, if I'm understanding your question.

But I will say: say they do file a motion to dismiss during a period that we're shut down, your time for responding would also be tolled. So you would: take the date that they filed it, add the response period – I think it's ten or fourteen days; sometimes I don't remember our rules

specifically – but say you have fourteen days to respond to a motion to dismiss, you would take the date that they filed it, add the fourteen days, and then add five days from when we reopen.

**MR. ASHCRAFT:**

Sorry, one follow-up question. I am not required to wait those fourteen days though, correct? If they file a motion to dismiss tomorrow and I can respond faster—

**JUDGE TIMLIN:**

No, you don’t have to wait. You’re just not going to be penalized if you take the full time. If you don’t file something within the dates, then I can take action seeing that it wasn’t responded to timely. You can always file things early; you just don’t want to get caught filing things late.

**MR. ASHCRAFT:**

Thank you so much, Your Honor. I believe that I would be able to file a response within just a couple of hours.

**JUDGE TIMLIN:**

Okay.

**MS. WILLIFORD:**

Your Honor—

**JUDGE TIMLIN:**

Go ahead.

**MS. WILLIFORD:**

Hello. Good afternoon. I’m so sorry about the government shutdown looming. I know that has to

be stressful for you and your office. I do have a couple of what I consider to be preliminary matters that I'd like to address with Your Honor, but I certainly don't want to interrupt your flow or your outline for today's hearing, if you have an agenda.

**JUDGE TIMLIN:**

No, let's go. This is a good time for questions, because the next thing really will be talking about discovery deadlines and scheduling.

**MS. WILLIFORD:**

Very good. So I'm just going to go through my list, Your Honor, and if at any point I don't make sense, please stop me. I'm happy to answer any questions that you have.

As Mr. Ashcraft alluded to, this case has been pending, so to speak, since May of this year, but you, Your Honor, were recently assigned to this case. It's Respondent's position that a preliminary issue for the Court to address is whether Mr. Ashcraft engaged in SOX-protected activity.

Your Honor noted that this is a court of limited jurisdiction. The OSHA decision below found that Mr. Ashcraft did not engage in SOX-protected activity, and based on our review of the pleading complaint, he still has not sufficiently alleged protected activity. And so we do intend to file a motion to dismiss on that issue by October 3rd, and we'll outline our argument and understanding of the pleading allegations for Your Honor.

It's our position that it does not make sense, from a judicial-economy and resources perspective, for the parties to engage in discovery until we've been able to be heard on that motion to dismiss. Our reason for that is even more emphasized – I understand in the OALJ things don't track

exactly as they do in federal court, where you've got a motion-to-dismiss period followed by a discovery period and things are clearly segmented. Here, it kind of flows together.

Our concern is emphasized because of what's already transpired in the couple of months that this case has been pending. During this period, Mr. Ashcraft has sent us numerous emails, motions, and discovery documents, and many of those are completely outside the scope of this case. One of the problems we have, which is why we'd like Your Honor to consider our motion to dismiss as a preliminary matter, is that we don't really know what we are litigating.

If there's no protected activity, or if the issue is whether there was protected activity, then we need a defined scope of what is allowable discovery.

By way of example, Your Honor, Mr. Ashcraft has already attempted to serve multiple interrogatories, requests for admissions, and requests for production of documents. He served those on our CEO individually at First Citizens Bank, our Chief Legal Officer at First Citizens Bank, my partner Jeremy Sayre – who is on this call – individually, and he served those on Michelle Ben, who is the General Counsel of Fox Rothschild, who has absolutely nothing to do with this case. He has also tried to serve notices of deposition for those individuals and other employees.

So I'm concerned that, if we begin a discovery effort together, it is going to quickly become something that will require a significant amount of motions practice on our end – seeking protective orders and things of that nature – when we really don't know what the scope of the case is at this point.

I'd also note for Your Honor, and ask for an instruction to this effect: every time Mr. Ashcraft attempts to serve a document on First Citizens, he will email our CEO, our Board of Directors, our Chief Legal Counsel, myself, Mr. Sayre, and Ms. Ben at our law firm. We've asked him not to do that, and he continues to do that. We are counsel of record for First Citizens Bank, and therefore there is no need for him to email all of those individuals. So we would ask for a limiting instruction from Your Honor about that, if Your Honor agrees with that sentiment.

**MR. ASHCRAFT:**

May I respond, Your Honor? She's going through a list, and I feel like I should have the ability to respond instead of trying to remember everything she's saying, especially since I've already served an ADA notification that this format is a little rough on me with my disabilities.

**JUDGE TIMLIN:**

Okay. Let's take things one at a time. You can respond to what she has said so far. Go ahead.

**MR. ASHCRAFT:**

I'm not sure if I'm supposed to try to litigate it here, but my pleading complaint lays out, pretty clearly, protected activities, adverse actions – everything that's happened.

I first have to start with a reservation, because I believe both Respondent's counsel are fact witnesses to spoliation and a direct fraud on the tribunal, meant to impugn my character to the Chief Judge. Both of these counsel were on the email where that attempt happened. So they should be walled off and unable to speak about a lot of these things.

But my pleading, as I'm sure you've read, Your Honor, lays out adverse actions, multiple threats, and what I consider an extortionary framing from Mr. Sayre – and when I say framing, I mean by framing the conversation. So I completely disagree with everything that Ms. Williford just said.

And again, I have an ADA-protected disability, so I'm now drawing a blank as to the other things that she said because that's just how my brain works. That's why I had asked for these things in writing, so that I would have a fair opportunity to respond.

**JUDGE TIMLIN:**

Okay. Continue, Ms. Williford. Everything after that, we'll take next.

**MS. WILLIFORD:**

Thank you, Your Honor. I believe where I left off was requesting a limiting instruction on service, that it is not required for him to email our Board of Directors, our CEO, etc. when serving documents.

**MR. ASHCRAFT:**

Thank you. Do you want me to respond to that, Your Honor, because now I remember since she refreshed my memory?

**JUDGE TIMLIN:**

Go ahead.

**MR. ASHCRAFT:**

Yes. I was notifying Ms. Ben because she is the General Counsel and I thought it was my duty to inform her when a counsel was acting without candor or in violation of the rules. I was notifying

the insurance adjusters because FCB has refused to provide me with who their insurers for D&O and EPLI are. And I was notifying the fiduciaries – the CEO and the General Counsel – because, although I know I'm required to serve Mr. Sayre, who had acted as counsel of record up until the 17th, it was my understanding that nothing prohibits me from also serving the decision-makers and fiduciaries of FCB, unless I'm incorrect on that.

**JUDGE TIMLIN:**

All right. I just realized I made a huge error in the beginning and I need to correct it. I asked for counsel and asked if you were present, but I did not ask if my court reporter was present and I did not say we're on the record. So I just want to stop and see: is my court reporter present?

**COURT REPORTER (MS. CARRASCO):**

Yes, Your Honor, Renee Carrasco.

**JUDGE TIMLIN:**

Have you been tracking this, or were you waiting for me to say "on the record"?

**COURT REPORTER:**

I was waiting for you, Your Honor.

**JUDGE TIMLIN:**

I am so sorry. Okay, let's go on the record. I'll quickly try to recap some of the things that I said, and then I'll recap what Ms. Williford and Mr. Ashcraft said. So, we're on the record.

**COURT REPORTER:**

We're on the record, Your Honor.

**JUDGE TIMLIN:**

Okay. Sorry about that.

So, present on this conference call is Mr. Jared Ashcraft, who is self-represented; and for First Citizens Bank, Ms. Lisa Williford and Mr. Jeremy Sayre, as counsel of record.

We discussed – prior to going on the record – with Mr. Ashcraft the fact that he is self-represented, and he said that he had made some attempts to find an attorney but that it was cost-prohibitive and he is proceeding on his own. I did caution him that, in my view, it is to his advantage to find an attorney to represent him, but that is not something that I can help him with.

I then explained that this is a court of limited jurisdiction; that I only have jurisdiction over the SOX complaint; and that, as a court of limited jurisdiction, I do not have subpoena authority. So I cannot compel witnesses or compel document production. If this is a case in which either side feels that they need to take advantage of subpoenas, they can employ the kick-out provision to take the case into federal district court.

I also talked about my rules in terms of motions and other filings, and that parties need, before they file any motions, to have made an attempt to work things out, and need to put in their motion that they did contact the other party, that they made such an attempt, and what the other party's position is – either that they oppose it or that they agree.

Then we talked about artificial intelligence, and I said that in any filings I need to have a disclosure if artificial intelligence has been used and I need an assurance from whoever is making the filing – be it the attorneys for the company or Mr. Ashcraft – that they have reviewed the filing and are attesting to its accuracy. Mr. Ashcraft had some questions and said that he does

use AI, but he did seem to understand what I'm looking for in terms of assurance that he has reviewed anything he files with me and that it is accurate to the best of his ability.

Then I explained that the government may experience a lapse of funding as of midnight tonight, and if that happens then everything is tolled and we discussed the effect that that has on deadlines. There will be an order on the Office of Administrative Law Judges' website that explains that although discovery should continue and parties should continue to engage in settlement negotiations, all other deadlines in terms of filings with the Court and orders from the Court are tolled, and that any filings due – for instance, in this case specifically there is an answer due from the employer on October 3rd – the deadline for that would be tolled. You would take the number of days that we are closed and add five days to that and then add that to October 3rd, and that would be the date the answer would be due. The same applies for responses to anything that is filed. Filings can still be made through our electronic filing system, but they will just be put in a queue; nothing will happen to them if the government is closed.

Then I heard from Ms. Williford, for First Citizens, who explained that the case has been pending since May of 2025; that they feel the preliminary issue – OSHA found that he did not engage in SOX-protected activity – is something they want resolved; their intention is to file a motion to dismiss by October 3rd; and their request is that they don't want discovery to take place until a decision's been made on the motion to dismiss, because if discovery is going to take place they want a defined scope of discovery. They also asked for a limiting instruction based on his past practice of serving multiple individuals in addition to counsel of record, and that he only serve counsel of record.

Mr. Ashcraft responded and explained that he has filed a notice asking for certain accommodations because of his disabilities, and that it becomes very difficult for him – he likes things in writing – and it becomes difficult for him to respond in these oral discussions.

I think that is where we were when I realized we had not gone on the record.

Anything, Mr. Ashcraft, that you think I missed in my recap of what we've discussed so far?

**MR. ASHCRAFT:**

No, that was a very impressive recap. I don't think I would have remembered all that.

**JUDGE TIMLIN:**

Okay. Ms. Williford?

**MS. WILLIFORD:**

Your Honor, you did a great job. That is where we are, and I'm happy to speak up if you think it's appropriate.

**JUDGE TIMLIN:**

Okay, so we're going to continue. One of the reasons – let me just explain this to you, Mr. Ashcraft – when I have people who are self-represented, I always make sure we have a court reporter available so that we have a written transcript, so that you can get a copy of the transcript. I will issue a written order that will also recount deadlines and anything that needs to be done as a result of this conference call, but I like to have the transcript available so that both parties will have it to see what was discussed and to have a written record.

I understand that, given my understanding of your disabilities, it is easier for you if you've got something written. So the point of having the court reporter is so that you will have a written document.

With that, let's continue. Ms. Williford, I think you were setting out some of the other things that you were concerned about.

**MS. WILLIFORD:**

Yes, Your Honor. Thank you very much. So we've covered the emails to our client. I also wanted to cover that, to date, this is the first opportunity I've actually had to speak with Mr. Ashcraft. Prior to this hearing, Your Honor directed us to confer with one another, and I attempted to do that with Mr. Ashcraft. He was not willing to do so or recognize me as lead counsel.

So I certainly appreciate Your Honor's instruction that we need to confer with one another prior to filing motions. I assume, Your Honor, that does not include the motion to dismiss that we've been openly discussing today, but would apply in future discovery motions.

I would like the Court's guidance or instruction that Mr. Ashcraft be required to confer with me. I will be serving as lead counsel in this matter, and I'm going to be unable to confer with him if he will not address me in his communications.

**MR. ASHCRAFT:**

To that, Your Honor – can we go issue by issue if I'm going to be allowed to respond, and not multiple issues at once?

The only reason I ask is because—

**JUDGE TIMLIN:**

I'm sorry. Let's do one issue at a time. So yes, you can respond to this issue about conferring with Ms. Williford.

**MR. ASHCRAFT:**

Thank you, Your Honor. I noted for the record that I had a pending motion to strike Ms. Williford's notice as late. I will follow any instructions that Your Honor gives, but she did not file a notice until September 19th. Mr. Sayre has acted as representative counsel from the beginning of this case. Mr. Sayre's candor and conduct has been an issue, and it is my belief that Ms. Williford was brought in to paper over the bad-faith actions of Mr. Sayre that are already on the record.

I am more than happy to confer with Ms. Williford, but again, I believe both of them are fact witnesses, which would make them both advocates and witnesses at the same time, which – I'm a layperson – but I believe that is against the ABA rules.

**MS. WILLIFORD:**

And, Your Honor, if I may respond to that. We are all bound by a code of civility. I understand that Mr. Ashcraft is not an attorney, but if he is going to participate in this Court, I would expect that he be civil with me as I will be civil with him.

In addition, his inference of all of these bad acts between myself and my partner, Mr. Sayre, is not founded in what has occurred here. I am certainly allowed to notice an appearance after Your

Honor is assigned to this case as our ALJ, which is exactly what I did. There is nothing unethical about that; there is nothing wrong about that.

So I would encourage an instruction going forward, particularly given what has transpired over the past couple of months. There have been repeated allegations in communications, even going so far as to file a bar complaint against my colleague. I think we really need to reset, Your Honor, going forward in this case in terms of how we address one another in communications. I really do.

**MR. ASHCRAFT:**

Your Honor, I don't believe that I have said or acted in any way other than polite and with candor. Mr. Sayre, from his very first email, insulted my intelligence, told me I wasn't able to understand laws, and I responded. From that point on, there have been three threats: he claimed that I was trying to extort FCB; he lied to the Chief ALJ in writing, and he did it to impugn my character. So I wholly disagree with Ms. Williford's framing of what has happened so far.

The record is already supplied to Your Honor, so you can see every email that's been back and forth. Every email that I've sent them has been nothing but polite, except for the very first time that we interacted after he insulted my intelligence and he used my—

**JUDGE TIMLIN:**

Okay, I'm going to stop here, because I want to make it clear: one of the other things about administrative judges in SOX cases is that I have what's called de novo review, which means I start the case from the day I get it. What happened before – usually, that's what happened in front of OSHA – I do not get the OSHA file. I do not have access to anything that happened

when the case was at OSHA, if there was an investigation or anything like that. I do not get access to anything you brought to OSHA's attention or anything that First Citizens may have brought to OSHA's attention.

I have the case new. It's a fresh case. I am going to tell you right now that I know this case was unassigned for a while, and that's not my call; that's the Chief ALJ's call on when he gets around to assigning cases. But I am going to take this case as it exists in front of me right now, and I don't really care what happened in front of the Chief Judge or OSHA. I care what happens in front of me.

I am going to rule on the case based on the evidence that gets presented to me, and the testimony that I hear if we get to the point of having a hearing. With that, I am going to say I do have expectations: I expect counsel to act as required under the professional rules of attorney conduct, and I also expect you, Mr. Ashcraft, to act, as Ms. Williford characterized it, with civility.

You're starting with a blank slate with me right now. My understanding is that counsel of record in this case for First Citizens is Ms. Williford as lead counsel. She is correct: there's no such thing as "coming into the case late." First Citizens has the right to choose who's going to represent them, and if they pick a firm, the firm has the right to decide which attorneys in that firm are going to work on which cases, and that can change during the life of a case. So she is not "late" in coming into the case, but she is lead counsel, and Mr. Sayre is working on the case with her.

I am going to treat them as lead counsel. That means they are counsel of record. Ms. Williford is the person you need to talk to when motions are being filed and there are reasons for conference.

She is the person you need to talk to if you get into discussions about settlement. She is the person to talk to about discovery or anything else in this case. You do not contact the company itself; you go through their counsel.

Same thing for you, Mr. Ashcraft. If you come in later in the case with an attorney representing you, once that attorney files an entry of appearance, it doesn't matter who the attorney is – it's your choice – at that point Ms. Williford can only deal with your attorney, and I will deal with your attorney, and everything that happens in the case will be through that attorney. It's your choice to choose your attorney, just as it was First Citizens Bank's choice to choose theirs. They have chosen the firm where Mr. Sayre and Ms. Williford are, and the firm has put Ms. Williford in the position of lead counsel. So that's who you're going to interact with: Ms. Williford. You can copy Mr. Sayre on things, but I don't want you sending things to the CEO or anybody else.

With that understood, the other thing is that I do understand that things operate a little differently here in terms of discovery deadlines, and we do tend to have things operating in tandem – discovery at the same time that motions to dismiss are filed. But I also do not want to be in a situation where either side is overwhelmed and burdened – where you, Mr. Ashcraft, are overwhelmed by discovery requests from First Citizens, or where First Citizens is overburdened by discovery requests from you.

So I think I am actually going to grant Ms. Williford's request that we not even start discovery until I've had an opportunity to look at the motion to dismiss, look at your response, and make a ruling. Once we do that, we will set a schedule. So I think we're going to do it that way instead, and probably today we're not even going to set discovery deadlines because that's somewhat

unrealistic anyway given the pending government shutdown. It does make sense that preliminary motions should be resolved first.

With that said, I will also say that, in my experience – and I've been an Administrative Law Judge for quite a while – our reviewing board, the Administrative Review Board, does not look favorably on ALJ decisions granting motions to dismiss at very early stages of the case, particularly in cases where one party is self-represented.

So, obviously, Ms. Williford should file her motion to dismiss. I'm not ruling on it in advance. I am going to look at it, I'm going to wait for your response, and I'm going to make a legal ruling based on the law as I see it and on the pleadings that are in front of me. Then we will move forward from there.

But just because she files a motion to dismiss does not mean that's it or that the case will end there. It may very well go on. And assuming it goes on, that will be the time to make decisions about how much time we need for discovery and how much discovery we're actually going to do.

**MR. ASHCRAFT:**

May I ask – I know you wanted us to talk, so I'll be quick – may I ask one more question?

**JUDGE TIMLIN:**

Yes, ask your question.

**MR. ASHCRAFT:**

I apologize. I just want to be very clear so that I'm not violating any rules. That's why I have

such an issue in these formats. Because of my high-functioning autism, I'm also trying to parse how I'm presenting myself – not being too blunt, not sounding like I'm being disrespectful when I'm not intending to. So I do apologize if anything comes off incorrectly.

Am I to understand that the things that happened before you took over the case – such as the spoliation, the threats of law enforcement, etc. – are you treating those separately?

**JUDGE TIMLIN:**

Yes. I am going to operate from a blank slate. I want this case focused on what matters in a SOX case. In a SOX case, there are certain things that have to be shown in order for someone to prevail. The complainant has to show certain elements:

They have to show that they engaged in protected activity, which means they made some kind of report or engaged in some conduct that implicates securities rules or other provisions of Sarbanes-Oxley. They have to show that the company knew about that protected activity. They have to show that there was some adverse action – oftentimes in these cases that's the easiest thing to prove, because these cases don't usually come in front of an ALJ unless somebody has been demoted, lost their job, or had some other bad thing happen to them at work. That's usually the easiest element.

Then the fourth element is proving that the reason the bad thing happened is because of the protected activity. So there are four things that have to be shown: protected activity, knowledge on the part of the employer, an adverse action, and that the adverse action was because of the protected activity. That's what I want to know about, frankly.

**MR. ASHCRAFT:**

That's why I brought up the spoliation. I was a decorated employee. I was three years "Exceeds Expectations." At the time of my termination, I was ranked number three nationwide for the amount of volume. I had never been written up before; I had never been counseled or had a verbal warning before.

When they spoilated my phone, they removed my access to all the files that I had on there that proved all of this. So that's why I feel like the spoliation of my phone and the remote wipe that Mr. Sayre unqualifiedly denied is a major portion—

**MS. WILLIFORD:**

And, Your Honor, if I may respond to Mr. Ashcraft. Our understanding is this case is about, as Your Honor articulated, whether he engaged in protected activity while he was employed by First Citizens Bank. The spoliation allegations relate to actions that occurred between the end of his employment and today, and they are wholly irrelevant to Your Honor's analysis.

And, in addition to our request that Your Honor hear our motion to dismiss, a second piece of that request relates to Mr. Ashcraft's use of AI. As Your Honor has seen in this case, his use of AI generates a significant number of documents, typically in the form of motions practice. Our review is that they are not largely supported by the cases cited in them. There have been inaccurate citations; there have been cases that don't actually support the propositions for which they are cited.

So, from our standpoint, to the extent that additional motions practice is allowed – and it would be our position that nothing further should be allowed until the motion to dismiss is heard – we

would ask Your Honor to provide a stay until Your Honor can fully hear that motion, because the burden, resources, and financial impact of responding to these very large motions – we're talking hundreds of pages – is astronomical at this stage of the case. In order to respond, we obviously have to read them.

So, Your Honor, we renew our request for a stay on any additional motions practice or discovery until our motion to dismiss is considered. And then, to the extent that the case goes forward, we would ask for Your Honor's guidance on perhaps limitations to additional practice that is within the scope of the case.

**JUDGE TIMLIN:**

Okay. Mr. Ashcraft?

**MR. ASHCRAFT:**

As a layperson, I don't understand how deleting evidence off my phone would not relate, when I anticipate that after their motion to dismiss, if it does not go through, they're going to try to frame me as a bad employee. My phone held the records to prove that I was nothing but an exemplary employee.

So the deletion of all the records off my phone, and the refusal to allow imaging of the laptop where all of these files and evidence reside, would be directly reflective of my entire case. So spoliating the evidence, removing an OSHA investigator, and then making a false denial about it seems to me like it would be directly related to this case. If I'm misunderstanding, then I apologize.

**JUDGE TIMLIN:**

Okay. The issue about the phone and the issue about the laptop – those are really discovery issues, and we're not there yet. If and when we get to discovery, we can revisit whether there's a remedy, whether or not that happened, and whether there's a remedy in terms of documents you can request from the company through discovery.

Removing the OSHA investigator – again, that's something that happened at OSHA. This is a brand-new case to me. You have to develop that evidence and put it in front of me; I have nothing to do with the OSHA investigator.

But I do think Ms. Williford's point is well-taken that, before we get into discovery issues, I really do need time to review their motion to dismiss and your response. So that's where we're going to leave the case right now: we're not going to start discovery.

The instruction I'm going to give you is: no discovery is to take place in this case until I've issued a ruling on the motion to dismiss. Even though the order on the website from the Chief Administrative Law Judge is going to say that you can continue doing discovery, in this case specifically no discovery is to take place until I have ruled.

The motion to dismiss is due right now on October 3rd. That deadline will be tolled if we shut down. Your response would be due – I believe, please check the rules – fourteen days after they file their motion to dismiss. You can file earlier; you don't have to, but you can't file late. And again, those deadlines will be tolled if we shut down.

Once I'm back, this will be a high priority for me to rule on so that we can move the case forward, because it is very clear to me that we're not going to be able to move the case forward

until I make a decision on whether your pleadings and your response to the motion to dismiss have given me enough to determine whether or not this case should go forward.

I think that's where we're going to leave it for today. Is that clear to everybody? Does that work for you, Ms. Williford?

**MS. WILLIFORD:**

Yes, Your Honor. Thank you very much for your consideration of all these issues today. We appreciate it.

**JUDGE TIMLIN:**

Okay. And Mr. Ashcraft, do you understand? What's going to happen right now – assuming that we stay open on the 3rd – is that they're going to file their motion to dismiss and then you're going to have time to respond to it. Once I get your response, I will work on issuing an order.

When I issue my order, what will probably happen is: if I deny the motion to dismiss, I will set up an additional conference call at that point where we will discuss discovery, scope of discovery, length of time for discovery, and a potential hearing date.

But I think right now, given everything that's going on both with the federal government and with this particular case, the best thing to do is to leave it that I'm going to wait for the motion to dismiss and your response, and then we'll move on from there.

Any further questions?

**MR. ASHCRAFT:**

No, ma'am. Thank you so much.

**MS. WILLIFORD:**

No questions from Respondent. Thank you, Your Honor.

**JUDGE TIMLIN:**

Okay. We can go off the record. Do you need any spellings on anything?

**MS. WILLIFORD:**

I do not, Your Honor. Thank you very much.

**JUDGE TIMLIN:**

Okay. Thank you so much. And keep your fingers crossed that Congress figures out something to do between now and midnight. All right. Thanks, everybody. I hope you all have a wonderful day.

[End Transcript]

***CERTIFICATION:*** *This transcript was generated from the provided audio file "Conference recording.m4a." While every effort has been made to ensure accuracy and adherence to judicial formatting, this is not an official certified transcript from the court reporter of record.*

Jared Ashcraft
Digitally signed by Jared Ashcraft
DN: cn=Jared Ashcraft, c=US, o=ADA | FMLA | SOX Whistleblower, email=legal@ashcraft.me
Date: 2025.12.05 09:03:03 -08'00'

**Jared Ashcraft**
**Pro Se Complainant**
**Email: legal@ashcraft.me**
**Phone: (252)258-1535**

**UNITED STATES DEPARTMENT OF LABOR**
**OFFICE OF ADMINISTRATIVE LAW JUDGES**

| | | |
|---|---|---|
| Jared Ashcraft, | ) | |
| Complainant, | ) | |
| | ) | Case No. 2025-SOX-00035 |
| v. | ) | |
| | ) | |
| First Citizens Bank, | ) | |
| Respondent. | ) | |

# COMPLAINANT'S NOTICE OF JUDICIAL ADMISSION ESTABLISHING FIDUCIARY-LEVEL KNOWLEDGE OF "RED FLAG" MISCONDUCT (CAREMARK)

---

**TO: The Honorable Judge Timlin**

**PURPOSE**
Complainant respectfully submits this Notice to memorialize a material judicial admission made by Respondent's counsel, Ms. Lisa Williford, during the September 30, 2025, pre-hearing conference. **This Notice seeks no relief and is filed solely to ensure that the record accurately reflects that Respondent's counsel confirmed, on the record, that the highest fiduciaries of First Citizens BancShares, Inc.—including its Chief Executive Officer, General Counsel, and Board of Directors—had contemporaneous notice of the specific misconduct alleged in this matter.**

---

## I. The Judicial Admission Placed on the Record

During the September 30, 2025 pre-hearing conference, Respondent's counsel complained that Complainant had served filings directly upon First Citizens Bank's senior-most fiduciaries. In so doing, counsel expressly stated that Complainant's filings were being sent to and received by the Chief Executive Officer, the General Counsel, and the Board of Directors of First Citizens BancShares, Inc.

Jared Ashcraft
Digitally signed by Jared Ashcraft
DN: cn=Jared Ashcraft, c=US, o=ADA | FMLA | SOX Whistleblower, email=legal@ashcraft.me
Date: 2025.10.04 16:31:21 -07'00'

This statement constitutes a judicial admission under ***Oscanyan v. Arms Co.*, 103 U.S. 261, 268–70 (1880)**, confirming that the highest fiduciaries of the corporation were receiving contemporaneous notice of the specific misconduct alleged in this matter. Under settled law, such an unequivocal concession by counsel is binding on the party represented and may be acted upon by the tribunal.

---

## II. Legal Implications Under Delaware Fiduciary Law

As **First Citizens BancShares, Inc.** is a **Delaware corporation**, its directors and officers are governed by Delaware fiduciary principles, including the duty of oversight articulated in ***In re Caremark Int'l Inc. Derivative Litigation*, 698 A.2d 959 (Del. Ch. 1996)**, and subsequent Delaware decisions.

Once directors are placed on notice of credible evidence of misconduct—commonly referred to as a "red flag"—Delaware law imposes an affirmative obligation to investigate and remediate. Counsel's on-record admission establishes that the fiduciaries of First Citizens BancShares, Inc. had direct and contemporaneous knowledge of the following categories of red-flag misconduct:

1. **Willful spoliation of evidence** under multiple active litigation holds;
2. **Obstruction of a federal whistleblower investigation**;
3. **Bad-faith and misleading representations to a federal tribunal**;
4. **Post–judicial intervention witness intimidation and retaliatory threats**;
5. **ERISA § 510 coercion** aimed at forcing litigation concessions;
6. **Concealment of insurer identities and related coverage interference**; and
7. **Recurrent notice of fiduciary oversight exposure under the *Caremark* standard.**

Counsel's acknowledgment that these fiduciaries were aware of Complainant's filings forecloses any plausible claim of lack of knowledge or good-faith ignorance. **Their continued inaction following repeated notice may constitute a breach of the duty of loyalty and oversight as recognized under Delaware law.**

---

## III. Procedural and Record Implications

This judicial admission is material not only to the element of employer knowledge under the four-factor framework established by the Court, but also to the institutional awareness and intent underlying Respondent's continuing course of misconduct. The admission

Jared Ashcraft

Digitally signed by Jared Ashcraft
DN: cn=Jared Ashcraft, c=US, o=ADA | FMLA | SOX Whistleblower, email=legal@ashcraft.me
Date: 2025.10.04 16:31:21 -07'00'

provides independent corroboration that Respondent's governance structure was informed of, and failed to act upon, multiple categories of federally protected misconduct.

Complainant files this Notice to ensure this admission—and its attendant legal implications under Delaware law—are formally preserved in the administrative record. It will serve as a foundational reference in any future proceedings regarding sanctions, discovery into Board-level conduct, and potential referral to Respondent's Directors and Officers (D&O) insurers regarding unmitigated fiduciary exposure.

---

## IV. Preservation and Notice

This Notice is not a motion and seeks no affirmative relief. It is filed solely to preserve this material fact within the record for purposes of accuracy, transparency, and judicial economy. All rights as to subsequent motions, discovery requests, and remedies arising from this admission are expressly reserved.

Respectfully submitted,
Jared Ashcraft
Pro Se Complainant
Dated: October 4, 2025

Jared Ashcraft

Digitally signed by Jared Ashcraft
DN: cn=Jared Ashcraft, c=US, o=ADA | FMLA | SOX Whistleblower, email=legal@ashcraft.me
Date: 2025.10.04 16:31:21 -07'00'

## COMPLAINANT'S CERTIFICATION REGARDING LIMITED AI-ASSISTED DRAFTING

Pursuant to the Court's directives on candor and accuracy, Complainant hereby certifies as follows:

1. **Limited Use of Artificial Intelligence.** Generative artificial intelligence ("AI") was used solely as a drafting and formatting aid in the preparation of *Complainant's Notice of Judicial Admission Establishing Fiduciary-Level Knowledge of "Red Flag" Misconduct (Caremark)*.

2. **No AI-Based Legal Research or Fact Generation.** No legal research, case law citations, factual assertions, or evidentiary statements were generated by AI. All substantive facts derive directly from the record, Complainant's personal knowledge, or official filings already before the Court.

3. **Verification and Responsibility.** Complainant personally reviewed the entirety of this filing, verified all facts and authorities, and assumes full responsibility for its content.

I declare under penalty of perjury that the foregoing is true and correct.

Respectfully submitted,

**Jared Ashcraft**
*Pro Se Complainant*
legal@ashcraft.me

Jared Ashcraft

Digitally signed by Jared Ashcraft
DN: cn=Jared Ashcraft, c=US, o=ADA | FMLA | SOX Whistleblower, email=legal@ashcraft.me
Date: 2025.10.04 16:31:21 -07'00'

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing NOTICE was served on all parties listed below by electronic mail on this day of Saturday, October 4, 2025:

Jeremy Sayre
Fox Rothschild LLP
Email: jsayre@foxrothschild.com

Lisa Williford
Fox Rothschild LLP
Email: larthur@foxrothschild.com

Dated: October 4, 2025
Jared Ashcraft
Pro Se Complainant

Jared Ashcraft

Digitally signed by Jared Ashcraft
DN: cn=Jared Ashcraft, c=US, o=ADA | FMLA | SOX Whistleblower, email=legal@ashcraft.me
Date: 2025.10.04 16:31:21 -07'00'

**Jared Ashcraft**
**Pro Se Complainant**
**Email: legal@ashcraft.me**
**Phone: (252)258-1535**

**UNITED STATES DEPARTMENT OF LABOR**
**OFFICE OF ADMINISTRATIVE LAW JUDGES**

| | | |
|---|---|---|
| Jared Ashcraft, | ) | |
| Complainant, | ) | |
| | ) | Case No. 2025-SOX-00035 |
| v. | ) | |
| | ) | |
| First Citizens Bank, | ) | |
| Respondent. | ) | |

# COMPLAINANT'S CONSOLIDATED NOTICE OF COUNSEL'S KNOWING FALSE STATEMENT TO THE TRIBUNAL ON SEPT. 30, 2025 AND RECORD CLARIFICATION

*(September 30, 2025 Pre-Hearing Conference)*

## To the Honorable Judge Timlin:

Complainant files this Notice—not a motion—to correct a knowing, material false statement made by Respondent's counsel during the September 30, 2025 pre-hearing conference. Left uncorrected, the statement would operate as a fraud on the tribunal by excluding case-dispositive facts from the Court's threshold sufficiency analysis under 29 C.F.R. § 18.70(c). This Notice respects the Court's "clean slate" and current sequencing (motion to dismiss first), seeks no immediate relief beyond record correction, and preserves all rights.

## I. The Knowing False Statement Placed on the Record

Immediately after the Court set expectations for candor, Ms. Lisa Williford framed core misconduct as "post-employment" and, on that basis, argued that the spoliation was "wholly irrelevant" to the Court's analysis. **On this record, that assertion was a purposeful and knowing misrepresentation designed to narrow the Court's threshold sufficiency analysis on Respondent's motion to dismiss and prejudice the outcome.** Critically, during the same conference, Ms. Williford acknowledged that the spoliation event occurred; her subsequent claim that the conduct was solely "post-employment" was therefore a knowing misstatement of timing rather than a disputed legal position. **Courts have long recognized that unequivocal**

Jared Ashcraft

Digitally signed by Jared Ashcraft
DN: cn=Jared Ashcraft, c=US, o=ADA | FMLA | SOX Whistleblower, email=legal@ashcraft.me
Date: 2025.10.02 08:44:07 -07'00'

**concessions by counsel may operate as binding judicial admissions that a tribunal may act upon. See Oscanyan v. Arms Co., 103 U.S. 261, 268–70 (1880)** *(affirming the court's right to act upon counsel's opening concession of facts dispositive of the claim).*

**This misstatement could not have been inadvertent. Mr. Jeremy Sayre—Respondent's outside counsel—personally authored and transmitted the June 18, 2025 termination notice**. As co-counsel, Ms. Williford appeared while working in concert with Mr. Sayre. The defense team therefore possessed actual, contemporaneous knowledge of the operative dates (the June 4, 2025 spoliation sequence and the June 18, 2025 termination). Given that knowledge, representing to the Court that the misconduct was "post-employment" was a **knowing and willful** misstatement calculated to exclude dispositive facts from the threshold analysis.

## II. Why Counsel's Statement Is False (and Material)

### A. Pre-termination spoliation while Complainant remained employed (June 4, 2025).

The docketed materials reflect an organization data-removal/account-disable action on June 4, 2025, with contemporaneous "disabled" and "removing organizational data" notifications. These actions pre-dated termination and destroyed evidence bearing on performance and protected activity directly related to these proceedings. They are not post-employment events. See, e.g., JA-EXH-0001–0003 (screenshots reflecting org-data removal and disable state). Respondent's counsel acknowledged on the call that the spoliation occurred; only her timing characterization attempted to relocate that admitted event outside of employment, which the documentary record squarely contradicts.

### B. Termination executed by Respondent's outside counsel (June 18, 2025).

On June 18, 2025 at 2:36 PM, Mr. Jeremy Sayre—Respondent's outside counsel—wrote: "the Bank will reflect your employment status as terminated." This was the Bank's formal termination act, executed and communicated by counsel. Mr. Sayre was therefore an actor in the adverse action, not a mere messenger.

### C. Regulatory Complaint Sequence and Proximity (OSHA).

Complainant filed a SOX/OSHA complaint on **May 22, 2025**. Consistent with standard practice, OSHA initiated intake and outreach/notification to Respondent shortly thereafter. By **June 5, 2025**, counsel communications already reflected OSHA's involvement (including counsel's removal of the OSHA investigator from an email thread), confirming Respondent's awareness of the OSHA matter during this period. The **June 4, 2025** data-removal/disable sequence thus occurred **after the OSHA complaint and within the immediate OSHA-notification window**, supplying strong evidence of contemporaneous knowledge and retaliatory motive tied to protected activity.

**These facts are independently dispositive of timing. Ms. Williford's "post-employment" framing is contradicted by the record.**

## III. Materiality Under the Court's Four-Element Framework

The Court identified the governing test: protected activity, employer knowledge, adverse action, causation. The corrected timeline is material to each element:

Jared Ashcraft

Digitally signed by Jared Ashcraft
DN: cn=Jared Ashcraft, c=US, o=ADA | FMLA | SOX Whistleblower, email=legal@ashcraft.me
Date: 2025.10.02 08:44:07 -07'00'

• **Adverse action:** The June 4 wipe/disable during employment is an adverse action affecting terms and conditions; the June 18 counsel-executed termination is a separate adverse action.
• **Knowledge:** Execution of termination by outside counsel ties corporate knowledge and decision-making directly to the actor. Mr. Sayre's personal transmission of the June 18, 2025 termination constitutes actual knowledge of the termination date. Ms. Williford's acknowledgment that a spoliation event occurred places counsel on actual—and, at minimum, imputed—knowledge that the June 4, 2025 data-removal/disable sequence occurred during employment. Given this actual knowledge, any contrary representation to the Court as to timing is necessarily knowing and willful, not accidental.
• **Causation:** Protected activity (OSHA complaint on May 22, 2025) → OSHA notification/outreach to Respondent (late May–early June) → June 4 spoliation during employment → June 18 termination executed by counsel. This tight temporal sequence, combined with shifting explanations and targeted destruction of evidence, supplies sufficient circumstantial indicia of causation at the pleadings stage.

Labeling these events "post-employment" to render them "wholly irrelevant" is a material falsehood aimed at influencing the Court's analysis.

## IV. Pattern Evidence — This Is the Third Discrete Fraud on the Tribunal

To situate today's misconduct within the case history (without seeking sanctions here), Complainant notes this instance is the third discrete fraud on the tribunal:

1. **June 5, 2025:** A categorical denial surrounding the June 4 device-wipe sequence—issued after counsel shifted email threads and removed the OSHA investigator from the chain—misrepresented core preservation facts already reflected in system notices and screenshots (see JA-EXH-0001–0003 and companion service-desk/email records).

2. **August 8/20, 2025:** Directive–Denial Contradiction. Mr. Sayre issued multiple written directives (May 21, May 22, Aug. 8) prohibiting service on fiduciaries and insurers. On Aug. 20, he denied these directives existed before OALJ and accused Complainant of fabrication. **CALJ Henley's Aug. 21 Order preserved this contradiction in the record as potential fraud on the tribunal, to be adjudicated upon assignment of a presiding ALJ.** This event was especially egregious in that it was designed not only to mislead the tribunal, but also to impugn Complainant's credibility in the very proceeding where candor had been emphasized.

3. **September 30, 2025 (this filing):** Ms. Williford's "post-employment" framing—**a knowing and willful false statement**—attempted to erase pre-termination spoliation and counsel-executed termination from the Court's threshold sufficiency analysis under 29 C.F.R. § 18.70(c), despite counsel's on-the-call acknowledgment that the spoliation occurred.

Jared Ashcraft
Digitally signed by Jared Ashcraft
DN: cn=Jared Ashcraft, c=US, o=ADA | FMLA | SOX Whistleblower, email=legal@ashcraft.me
Date: 2025.10.02 08:44:07 -07'00'

**Complainant preserves all remedies arising from this pattern of deception, including but not limited to sanctions, adverse inferences, and referral.**

## V. Requested Record Correction; Rights Preserved

Complainant respectfully asks the Court to reject counsel's false post-employment framing and to treat as established, for purposes of the threshold sufficiency analysis under 29 C.F.R. § 18.70(c), that:

1. **the June 4, 2025 spoliation occurred while Complainant was still employed; and**
2. **the June 18, 2025 termination was executed by Respondent's counsel, Mr. Sayre; and**
3. **that Ms. Williford conceded to the fact that spoliation of evidence occurred to Your Honor on the record.**

**For clarity of the record, Complainant further notes that Respondent's counsel acknowledged the occurrence of the spoliation during the September 30, 2025 conference; only the timing characterization was misstated. Additionally, because Mr. Sayre personally communicated the June 18, 2025 termination and Ms. Williford acknowledged that a spoliation event occurred—after OSHA's engagement—neither counsel can plausibly disclaim knowledge that the June 4, 2025 spoliation predated termination and followed OSHA notification.**

This Notice does not request discovery rulings or sanctions at this time. Complainant reserves all rights, including ADA accommodations previously noticed and any subsequent remedies if lack of candor persists.

*(Given that this submission seeks no court order and requests no relief, Complainant understands no meet-and-confer is required.)*

Respectfully submitted,
Jared Ashcraft
Pro Se Complainant

---

Jared Ashcraft

Digitally signed by Jared Ashcraft
DN: cn=Jared Ashcraft, c=US, o=ADA | FMLA | SOX Whistleblower, email=legal@ashcraft.me
Date: 2025.10.02 08:44:07 -07'00'

# COMPLAINANT'S CERTIFICATION REGARDING AI-ASSISTED DRAFTING AND ACCURACY REVIEW

**Pursuant to the Court's directive and the duty of candor, Complainant hereby certifies:**
**Limited AI Use. Generative artificial intelligence was used solely as a drafting and formatting aid in the preparation of COMPLAINANT'S CONSOLIDATED NOTICE OF COUNSEL'S KNOWING FALSE STATEMENT TO THE TRIBUNAL ON SEPT. 30, 2025 AND RECORD CLARIFICATION dated September 30, 2025 (the "Notice").**

1. **No Fabricated Facts. No factual statement in the Notice originates from the AI tool. All facts are drawn from Complainant's personal knowledge and/or documents and materials already in the record. The Notice contains no hallucinated or fabricated factual assertions.**

2. **Human Review and Responsibility. Complainant personally reviewed the Notice in full, verified the accuracy of all factual statements and record references, and accepts full responsibility for the contents and their submission to the Court.**

**I declare under penalty of perjury that the foregoing is true and correct.**

**Respectfully submitted,**

**Jared Ashcraft**
**Pro Se Complainant**

Jared Ashcraft

Digitally signed by Jared Ashcraft
DN: cn=Jared Ashcraft, c=US, o=ADA | FMLA | SOX Whistleblower, email=legal@ashcraft.me
Date: 2025.10.02 08:44:07 -07'00'

## CERTIFICATE OF SERVICE

**I hereby certify that a true and correct copy of the foregoing Notice was served on all parties listed below by electronic mail on this day of October 3rd, 2025**

**Jeremy Sayre**
**Fox Rothschild LLP**
**Email: jsayre@foxrothschild.com**

**Lisa Williford**
**Fox Rothschild LLP**
**Email: larthur@foxrothschild.com**

**Jared Ashcraft**
**Pro Se Complainant**

Jared Ashcraft

Digitally signed by Jared Ashcraft
DN: cn=Jared Ashcraft, c=US, o=ADA | FMLA | SOX Whistleblower, email=legal@ashcraft.me
Date: 2025.10.02 08:44:07 -07'00'

Jared Ashcraft, Pro Se
[redacted]
legal@ashcraft.me

**UNITED STATES DEPARTMENT OF LABOR**

**OFFICE OF ADMINISTRATIVE LAW JUDGES**

| | |
|---|---|
| Jared Ashcraft,<br>Complainant,<br><br>vs.<br><br>First citizens bank,<br>Respondent | Case No.: 2025-SOX-00035<br><br>**COMPLAINANT'S SUPPLEMENTAL NOTICE REGARDING COUNSEL MISREPRESENTATIONS TO CALJ HENLEY (AUGUST 20, 2025) AND COUNSEL JUDICIAL ADMISSION AT THE SEPTEMBER 30, 2025 CONFERENCE** |

Complainant, Jared Thomas Ashcraft, files this Supplemental Notice for the limited purpose of preserving a discrete factual sequence for the administrative record. This Notice does not seek any ruling or relief. Its purpose is documentation.

---

## I. Written Directives Issued by Respondent's Counsel Prior to August 20, 2025

Between May 21, 2025 and August 8, 2025, Respondent's outside counsel, Mr. Jeremy Sayre of Fox Rothschild LLP, issued multiple written communications to Complainant regarding service and routing of communications. These include:

Jared Ashcraft
Digitally signed by Jared Ashcraft
DN: cn=Jared Ashcraft, c=US, o=ADA | FMLA | SOX Whistleblower, email=legal@ashcraft.me
Date: 2025.12.06 11:54:57 -08'00'

1. May 21, 2025 correspondence directing Complainant to "refrain from attempting to contact Mr. Martin or other Bank leaders" and to route "relevant communications" to counsel.
2. May 22, 2025 email reiterating that there was "no reason to copy senior leaders and other Bank representatives," stating Respondent "prefer[s] that you do not do so," and again instructing that future communications be sent exclusively to counsel.
3. August 8, 2025 email describing Complainant's inclusion of fiduciary-level recipients as "unnecessary and improper," and instructing that "any relevant communication" be directed only to counsel.

These communications are part of the case file and have been previously submitted.

**The subject matter of the communications at issue included Complainant's internal-control, revenue-recognition, and retaliation concerns, and the recipients included fiduciary-level individuals such as the Bank's Chief Executive Officer, General Counsel, and members of the Board. Under 18 U.S.C. § 1514A, those communications and recipients bear directly on the statutory elements of protected activity, employer knowledge, and causation.** Counsel's directives therefore addressed whether those fiduciary-level individuals would receive Complainant's reports and case-related correspondence directly, or only indirectly through outside litigation counsel.

---

## II. Respondent's August 20, 2025 Representation to Chief Administrative Law Judge Henley

Jared Ashcraft
Digitally signed by Jared Ashcraft
DN: cn=Jared Ashcraft, c=US, o=ADA | FMLA | SOX Whistleblower, email=legal@ashcraft.me
Date: 2025.12.06 11:54:57 -08'00'

On August 20, 2025, after Complainant filed a notice concerning the above directives, the Chief Administrative Law Judge's Docket Clerk relayed a representation from Respondent's counsel, Mr. Sayre.

That representation stated that Complainant's assertion—that counsel had instructed him it was "improper" to serve or copy certain fiduciary-level individuals—was "false."

This statement was made to the Office of the Chief ALJ on August 20, 2025. The representation is part of the administrative record.

---

## III. Statements Made During the September 30, 2025 Pre-Hearing Conference Before ALJ Timlin

During the September 30, 2025 pre-hearing conference, Respondent's lead counsel, Ms. Lisa Williford, addressed Complainant's practice of copying fiduciary-level individuals when serving filings.

In the course of that discussion, Ms. Williford stated on the record:

"Every time Mr. Ashcraft attempts to serve a document on First Citizens, he will email our CEO, our board of directors, our chief legal counsel, myself, Mr. Sayre, and Ms. Benn. We've asked him not to do that."

This statement was made to the presiding Administrative Law Judge during live colloquy. The audio transcript, as transcribed by Complainant and submitted separately, reflects this language.

Jared Ashcraft

Digitally signed by Jared Ashcraft
DN: cn=Jared Ashcraft, c=US, o=ADA | FMLA | SOX Whistleblower, email=legal@ashcraft.me
Date: 2025.12.06 11:54:57 -08'00'

---

## IV. Sequence of Material Facts Preserved for the Record

For purposes of clarity and future review, the following chronology is preserved without argument:

1. **May–August 2025:** Respondent's counsel issued written directives discouraging or prohibiting Complainant from serving or copying fiduciary-level individuals, using language including **"refrain," "prefer that you do not," and "unnecessary and improper."**
2. **August 20, 2025:** Respondent's counsel represented to Chief ALJ Henley—via the Docket Clerk—**that Complainant's description of those directives was "false."**
3. **August 20–21, 2025 (Order of the Chief ALJ):** In response to Complainant's notices regarding Respondent's alleged threats and intimidation and counsel's request that **Complainant "stop including individuals that are not parties to the matter when serving documents,"** the Chief Administrative Law Judge issued an order acknowledging those competing submissions. The order did not direct Complainant to cease copying any individuals. It stated that, once a presiding judge was assigned, that Complainant **"may seek appropriate relief regarding these allegations."**
4. **September 30, 2025:** Respondent's lead counsel stated to the presiding ALJ, in reference to Complainant's service on fiduciary-level recipients: **"We've asked him not to do that."**
5. **Subsequent directive by the presiding ALJ:** Following the September 30, 2025 conference, the presiding Administrative Law Judge issued a directive that Complainant

Jared Ashcraft
Digitally signed by Jared Ashcraft
DN: cn=Jared Ashcraft, c=US, o=ADA | FMLA | SOX Whistleblower, email=legal@ashcraft.me
Date: 2025.12.06 11:54:57 -08'00'

not copy Respondent's CEO, Board, or General Counsel on case-related email communications and that such communications instead be routed through counsel of record**, notwithstanding that the Chief Administrative Law Judge's earlier order had not prohibited such copying and had reserved any requested relief on those allegations for the presiding judge once assigned.**

These events occur in linear sequence and pertain to the same subject matter: counsel's instructions to Complainant regarding service on certain individuals.

---

## V. Notice Concerning Advocate-Witness Status

At the September 30 hearing, **Complainant stated on the record that both Mr. Sayre and Ms. Williford possessed personal knowledge of the events underlying these communications and representations.** That notation was made prior to receipt or transcription of the hearing audio and prior to the preparation of this Notice.

This Notice solely preserves the fact that:

- **Counsel's written directives (May 21–August 8),**
- **Counsel's representation to the Chief ALJ (August 20), and**
- **Counsel's on-record statements to the presiding ALJ (September 30),**

concern overlapping factual issues within counsel's personal knowledge.

---

Jared Ashcraft

Digitally signed by Jared Ashcraft
DN: cn=Jared Ashcraft, c=US, o=ADA | FMLA | SOX Whistleblower, email=legal@ashcraft.me
Date: 2025.12.06 11:54:57 -08'00'

## VI. Purpose of this Notice

This Notice does not request any ruling, action, instruction, sanction, finding, or remedy.

This filing serves only to:

1. Ensure the above sequence of representations and admissions is preserved in the OALJ docket;
2. Create a clean factual record for any future review by the Administrative Review Board; and
3. Maintain clarity for any future de novo proceedings in federal district court, where completeness and internal consistency of the administrative record are relevant.

No further action from the Court is requested or required.

Respectfully submitted,
**Jared Thomas Ashcraft**
Complainant, Pro Se

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Document was served on all parties listed below by electronic mail on this day of Saturday, December 6, 2025:

Jeremy Sayre
Fox Rothschild LLP
Email: jsayre@foxrothschild.com

Lisa Williford
Fox Rothschild LLP
Email: larthur@foxrothschild.com

Jared Ashcraft

Digitally signed by Jared Ashcraft
DN: cn=Jared Ashcraft, c=US, o=ADA | FMLA | SOX Whistleblower, email=legal@ashcraft.me
Date: 2025.12.06 11:54:57 -08'00'

## AI CERTIFICATION

Pursuant to the Court's standing order regarding the use of artificial intelligence in filings, Complainant hereby certifies that he used an artificial intelligence tool to assist in drafting this Document. Complainant has personally reviewed, edited, and approved the contents of this filing, and takes full responsibility for the factual statements, legal arguments, and citations contained herein.

Dated: December 6, 2025

Jared Ashcraft
Pro Se Complainant

Jared Ashcraft

Digitally signed by Jared Ashcraft
DN: cn=Jared Ashcraft, c=US, o=ADA | FMLA | SOX Whistleblower, email=legal@ashcraft.me
Date: 2025.12.06 11:54:57 -08'00'